FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 28 2024

JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 21-cr-00034-WJM-1

UNITED STATES OF AMERICA,

      Plaintiff,

          v.

1.    MICHAEL SHAWN STEWART,

      Defendant.

---

## MICHAEL YOUNG'S MOTION TO INTERVENE TO PROTECT HIS ASSETS AGAINST PRELIMINARY AND FINAL ORDER OF FORFEITURE

---

Third Party Michael Young, through his undersigned counsel, moves to intervene in these proceedings to protect his constitutional right prohibiting the federal government from depriving him of his property without due process. As grounds, Mr. Young states as follows:

### CONFERRAL

Undersigned counsel for Mr. Young has conferred with counsel for the United States of America and counsel for Michael Shawn Stewart. The United States opposes this motion. Mr. Stewart takes no position.

### INTRODUCTION

Mr. Young is a former business partner of Mr. Stewart and Mr. Sewall. Unlike his former partners, Mr. Young was *not* indicted for fraud. Mr. Young was a witness called by the

United States in the trials of Mr. Stewart and Mr. Sewall.  During that trial, the evidence showed that Mr. Young was misled by his partners and had no knowledge of their misconduct.

Nonetheless, the United States seeks a preliminary order of forfeiture over a number of assets owned by Mr. Young and his family including the home that is the only residence for Mr. Young, his wife Maria Young, and their six children.  Mr. Young's assets were never owned by Mr. Stewart or Mr. Sewall and should not have been included in the government's forfeiture motion.

The government's attempt to seize and forfeit the assets of Mr. Young and his family as part of the sentencing of Mr. Stewart and Mr. Sewall is not just unfair, but it violates the law in a number of ways.  Mr. Young seeks to intervene to protect his right to due process prior to the deprivation of his property.  Because even a preliminary order of forfeiture permits the seizure and sale of Mr. Young's assets, intervention is necessary now, prior to any ancillary proceedings, as Mr. Young's assets should not be subject even to a preliminary order of forfeiture as set forth below.

## LEGAL STANDARD

"The Federal Rules of Criminal Procedure contain no mechanism for third party intervention in the proceedings.  However, despite a lack of authority in the criminal rules, motions to intervene in criminal proceedings have been granted in limited circumstances where a third party's constitutional or other federal rights are implicated by the resolution of a particular motion, request, or other issue during the course of a criminal case." *United States v. Rosenschein,* No. CR 16-4571 JCH, 2020 WL 2750247, at *1 (D.N.M. May 27, 2020); *United*

*States v. Alpha, Inc. et al.,* No. CR 17-1836 MV, 2024 WL 4527759, at *3 (D.N.M. Oct. 18, 2024) (same).

## ARGUMENT

**A.    Intervention is necessary to protect the Youngs from deprivation of their property without due process.**

The United States may argue that intervention is premature because Mr. Young has the opportunity to protect his property pursuant to an ancillary proceeding under Federal Rule of Criminal Procedure 32.2(c).  This position is incorrect because Mr. Young's property can be seized and sold *before* an ancillary proceeding is brought if his property is subject to a preliminary order of forfeiture.  Federal Rule of Criminal Procedure 32.2(b)(7) provides for an interlocutory sale *before* entry of a final forfeiture order as follows:  "**Interlocutory Sale.** At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable."  Fed. R. Crim. P. 32.2(b)(7).  .  Supplemental Rule G(7) permits an interlocutory sale on motion if, among other reasons, "the court finds other good cause."

Federal Rule of Criminal Procedure 32.2(b)(3) authorizes the government to seize property *before* entry of a final forfeiture order as follows:  "**Seizing Property.** The entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize the specific property subject to forfeiture; to conduct any discovery the court considers proper in identifying, locating, or disposing of the property; and to commence proceedings that comply with any statutes governing third-party rights. The court may include in the order of forfeiture conditions reasonably necessary to preserve the property's value pending any appeal."  Fed. R. Crim. P. 32.2(b)(3).

In conferral, the United States has stated that it will not unequivocally agree not to seize or sell Mr. Young's assets prior to the resolution of any ancillary proceeding. Given the real possibility that the government would seize and sell Mr. Young's property without any due process, Mr. Young seeks leave to intervene now in order to protect his constitutional right against deprivation of his property without due process. Mr. Young submits that his assets should not be subject to a preliminary order of forfeiture for three reasons set forth in detail below.

**B.      The United States is violating the law and its plea agreement with Mr. Young by seeking forfeiture of his property in the sentencing of Mr. Stewart and Mr. Sewall.**

Mr. Young was never charged with fraud. Mr. Young was charged through a 1 ½ page Information with one count under 18 U.S.C. § 1001. *See* Exhibit A. The United States did *not* seek forfeiture of Mr. Young's assets in the § 1001 Information. *Id.* The United States and Mr. Young entered into a plea agreement on January 5, 2021. *See* Exhibit B. The United States did *not* seek forfeiture of Mr. Young's assets in the plea agreement. *Id.* Mr. Young was sentenced on June 11, 2024. *See* Exhibit C. In imposing sentence on Mr. Young, the United States did not seek, and the Court did not Order, forfeiture of any of his assets. *Id.* Mr. Young was *not* ordered to pay any restitution. *Id.* Mr. Young was ordered to pay a fine of $4,000 and an assessment of $100, which he paid the same day he was sentenced.

By now seeking forfeiture of Mr. Young's assets as part of the sentencing of Mr. Stewart and Mr. Sewall, the United States is violating its plea agreement with Mr. Young because Mr. Young entered the plea with the understanding that forfeiture of his assets was *not* sought by the government. The United States is also violating the Court imposed sentence which limited the financial obligation of Mr. Young to $4,100.

Most egregiously, the United States is violating the very Rule it relies upon in seeking

forfeiture.  Fed. R. Crim. Proc. Rule 32.2 provides as follows:

> **(a) Notice to the Defendant. A court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute.** The notice should not be designated as a count of the indictment or information. The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks.

Fed. R. Crim. P. 32.2 (emphasis supplied).  Rule 32.2 plainly prohibits a court from entering a

judgment of forfeiture against a defendant unless the indictment or information contained notice

that the government will seek forfeiture.  Here, Mr. Young's Information did not contain any

notice that the government would seek forfeiture of Mr. Young's assets.  Moreover, the

Indictment against Mr. Stewart and Mr. Sewall did not include any notice that *Mr. Young's*

assets were at risk in his former partners' proceedings.  It is flatly improper for the United States

to seek an end run around Mr. Young's rights under Rule 32.2 by entering a plea agreement that

does not include forfeiture of his assets and waiting until after the trial of entirely different

people to spring a forfeiture on Mr. Young that violates his agreement with the government as to

his sentence.

In addition, by seeking forfeiture of Mr. Young's assets *after* his sentencing, and in

contradiction of the fine imposed against him, the government is violating Fed. R. Crim. P.

32.2(b)(4)(B).  Pursuant to that Rule, "[t]he court must include the forfeiture when orally

announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at

sentencing."   It violates the Rule and is grossly unfair to Mr. Young for a forfeiture against him

to be imposed at this late date, without notice, and in contravention of both his plea agreement and his sentence.

Mr. Young further notes that his right to a special verdict form is violated by the government's present action. Rule 32.2(b)(5) requires the government, upon a defendant's request, to submit a Special Verdict Form "listing each property subject to forfeiture and asking the jury to determine whether the government has established the requisite nexus between the property and the offense committed by the defendant." Had Mr. Young been given proper notice of forfeiture of his assets, he would have requested such a special verdict form. The government is depriving him of this right by seeking forfeiture of his assets only *after* his plea and sentencing were final.

**C.    The United States is violating Judge Moore's Order in the related civil action by seeking forfeiture of assets that are the subject of a global receivership stay.**

The United States is aware of, and even noted in its motion for preliminary order of forfeiture, that the Securities and Exchange Commission ("SEC") brought a civil action against Mr. Stewart, Mr. Sewall, Mr. Young and others on September 12, 2019, styled *Securities & Exchange Commission v. Mediatrix Captital Inc. et al.,* Civil Action No. 19-cv-2594-RM-TPO (the "SEC Action"). Although the United States advises this Court that a Receiver was appointed in the Civil Action, the United States failed to advise this Court that the Receiver was placed in charge of all of the assets the government now seeks to seize and sell and that there is a Court-ordered stay against any and all actions involving the same assets. A true and correct copy of the Order Appointing Receiver is submitted herewith as Exhibit D. That Order signed by United States District Court Judge Raymond Moore contains a blanket stay against any other action seeking the assets under the Receiver's control. The Order states, in pertinent part:

### Stay of Litigation

24. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, **or other actions of any nature involving:** (a) the Receiver, in his capacity as Receiver; **(b) any Receivership Property, wherever located**; (c) any of the Receivership Defendants and Receivership Relief Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' and Receivership Relief Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

<center>**</center>

26. **All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.** Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants or Receivership Relief Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

The United States has not sought relief from the stay against any action involving the same assets held by the Receiver in the SEC Action. Because all of the assets identified in the government's forfeiture motion are already frozen and controlled by the Receiver in the SEC Action, this Court has no jurisdiction to order forfeiture of assets now held by the Receiver pursuant to Judge Moore's Order. Every asset identified by the government is subject to the exclusive jurisdiction of Judge Moore in the SEC Action.

The law is well-established that global stays in receivership actions are enforceable. A stay is common in receiverships in order to assure judicial efficiency. As Judge Weinshienk explained for the federal District of Colorado:

> This Court has the power to enjoin particular actions or to issue a "blanket stay" order effective against all persons, including non-parties, of all proceedings against the receivership entity in order to prevent interference with administration of the receivership. … When the receivership court takes jurisdiction of the debtor's estate, it has power to issue orders barring actions which would interfere with its administration of that estate[.] [T]he appointing court frequently issues a blanket injunction against interference with the court's possession and control of the res. The power of a federal court to enter such stays does not depend on specific congressional authorization. Rather, this authority is based upon the inherent and broad equitable powers of federal courts to protect its jurisdiction over the property for which it has taken possession.

*Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.*, 929 F. Supp. 369, 373 (D. Colo. 1995) (internal citations omitted).

"The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the []action. The district court took control over the properties in question when it imposed the receivership and appointed [the receiver] as receiver to manage those properties. The blanket stay was found by the district court necessary to achieve the purposes of the receivership. We conclude the district court had the power to enter the order." *S.E.C. v. Wencke,* 622 F.2d 1363, 1369 (9th Cir. 1980).

The United States is not above the law. If the government wants to seize and sell assets that are maintained by the Receiver in the SEC Action, the government has an obligation to seek relief from the stay in the SEC Action before interfering with the receivership ordered and maintained to this date by Judge Moore.

**D.      Mr. Young's assets are subject to the exclusive jurisdiction of the Tenth Circuit.**

Mr. Young sought relief from the asset freeze in the SEC Action and his motion was denied by Judge Moore.  Mr. Young appealed that decision and whether or not he can access his own frozen assets is now subject to the exclusive jurisdiction of the Tenth Circuit in the matter styled *U.S.S.E.C. v. Michael S. Young* et al., 23-1339, Tenth Circuit Court of Appeals.  Because the Tenth Circuit is now determining whether or not Mr. Young can have access to his own assets, this Court cannot enter any order involving those same assets as it would be improper for this Court to order forfeiture of assets that the Tenth Circuit may order returned to Mr. Young. This is black letter law.  "Filing a timely notice of appeal pursuant to Fed.R.App.P. 3 transfers the matter from the district court to the court of appeals. The district court is thus divested of jurisdiction." *Garcia v. Burlington N. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987).

**E.      Mr. Young's assets should be withdrawn from the assets over which the United States seeks a preliminary order of forfeiture.**

This Court can take judicial notice that Mr. Young's assets were not identified in the Indictment against Mr. Stewart and Mr. Sewall.  In that Indictment, the United States identified the following assets as subject to forfeiture:

> a.Real property located at Mira Mar Villas, #15 Garden Drive, Paradise Island, Bahamas;
>
> b. Real property located at 704 Ocean Place Condominiums, Paradise Island, Bahamas;
>
> c. All funds held in account number 2003719.01 at Ansbacher (Bahamas) Ltd., held in the name of Mediatrix Capital Fund Ltd.;
>
> d. All funds held in account number 1007557881 at Global Fidelity Bank Ltd., held in the name of Blue Isle Markets Inc;
>
> e. All funds held in account number 1007557882 at Global Fidelity Bank Ltd., held in the name of Blue Isle Markets Inc;

       f. All funds held in Equiti Capital UK Ltd., brokerage account number 70160, held in the name of Blue Isle Markets Inc.;

       g. All funds held in Equiti Capital UK Ltd., brokerage account number 70166, held in the name of Blue Isle Markets Inc.;

       h. All funds held in Equiti Capital UK Ltd., brokerage account number 70167, held in the name of Blue Isle Markets Inc.;

       i. All funds held in Advanced Markets (UK) Limited, brokerage account BLUEISLE_WL, held in the name of Blue Isle Markets Inc.;

       j. All funds held in Advanced Markets (UK) Limited, brokerage account BLUEISLE2_WL, held in the name of Blue Isle Markets Inc.

*See* Doc. No. 1 at p. 15, ¶26. Although the United States need not specify every item in the indictment, it is telling that the government only added Mr. Young's assets to its forfeiture list *after* Mr. Young entered a plea and was sentenced.

      Mr. Young's assets are not subject to forfeiture as a matter of law and they should not be subject to a preliminary order of forfeiture in the sentencing of Mr. Stewart or Mr. Sewall. Mr. Young asks this Cout to grant his motion to intervene and to enter an Order denying a preliminary order of forfeiture of Mr. Young's assets which are identified as Asset Nos. 38-54 in the United States of America's Motion for Preliminary of Forfeiture, all of which belong to Mr. Young and/or his family members.

      Respectfully submitted this 28th day of October 2024.

<div style="margin-left:50%">

*s/ Tracy L. Ashmore*
Tracy L. Ashmore
Robinson Waters & O'Dorisio, P.C.
1099 18th St., Ste 2600
Denver, CO 80202
Phone: 303.297.2600
tashmore@rwolaw.com

*Attorney for Michael S. Young*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I caused the foregoing **MICHAEL YOUNG'S MOTION TO INTERVENE** to be electronically filed and served upon all counsel of record via the Court's CM/ECF system.

*s/ Tiffany Arguello*
Robinson Waters & O'Dorisio, P.C.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No.   20-cr-00349-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    MICHAEL STEPHEN YOUNG,

      Defendant.

---

## INFORMATION

---

The UNITED STATES ATTORNEY charges that:

### <u>COUNT ONE</u>
### 18 U.S.C. § 1001

On or about April 10, 2019, within the State and District of Colorado, defendant MICHAEL STEPHEN YOUNG, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by providing the following false testimony to representatives of the United States Securities and Exchange Commission ("SEC") during the SEC's investigation regarding Mediatrix Capital, Inc.:

- SEC Question: "When was the first time that Mediatrix Capital in any format raised funds from an investor?"

1

**EXHIBIT A**

- Defendant YOUNG's answer: "Would have been first quarter of two thousand — well outside of Mr. S[.] and his — the marines that he — okay. It would have been first quarter of 2016."

Defendant YOUNG's statement and representation were false because, as defendant YOUNG then and there knew, defendant YOUNG and his partner M.S. raised more than $500,000 in funds from investors through Mediatrix Capital in 2015 and quickly lost all or most of those investor funds by unsuccessfully trading it in the Foreign Exchange Market.

All in violation of 18 U.S.C. § 1001.

JASON R. DUNN
UNITED STATES ATTORNEY

By: Pegeen D. Rhyne
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Phone: (303) 454-0100
Fax: (303) 454-0402
pegeen.rhyne@usdoj.gov

2

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-00349-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.  MICHAEL STEPHEN YOUNG,

        Defendant,

---

**PLEA AGREEMENT AND STATEMENT OF FACTS
RELEVANT TO SENTENCING**

---

The United States of America, by and through Pegeen D. Rhyne, Assistant United States Attorney for the United States Attorney's Office for the District of Colorado (the "government"), and the defendant, Michael Stephen Young ("Young" or the "defendant"), personally and by counsel, Fredric Winocur and Brian Leedy, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

<u>I.   AGREEMENT</u>

1.     The defendant agrees to plead guilty to a single-count Information, charging him with making a false statement, in violation of 18 U.S.C. § 1001.

2.     The defendant agrees to pay the $100 special monetary assessment applicable to this count at or before the time of sentencing.

3.     The defendant agrees that a sentence within the guideline range of 10 to

**EXHIBIT B**

16 months is reasonable, and the defendant agrees not to argue for, or request, a sentence below that range.

4.    The defendant agrees to give his complete cooperation during the investigation and prosecution of any criminal charges, including, but not limited to, meeting with government investigators or prosecutors at reasonable times and as often as they deem necessary, appearing voluntarily and providing truthful testimony at any hearing or trial proceeding when requested, providing investigators with his current address and phone number until any related proceedings are concluded, and providing documents or items within his possession or control when requested.

5.    The government agrees that any information and testimony given by the defendant pursuant to this agreement will not be used against him, either directly or indirectly, in any criminal case except for prosecutions for perjury, making a false statement, or obstruction of justice, or for impeachment.   Information and testimony will not be used against the defendant pursuant to Section 1B1.8 of the Sentencing Guidelines.   Any information and testimony relating to the defendant's involvement in crimes of violence, based on the common law definition of that term, is excluded from this agreement.

6.    The defendant agrees that if the government can show that he lied or attempted to mislead the government or law enforcement authorities, or if he does not fulfill the terms of or does not complete his cooperation under this agreement, he is in breach of this plea agreement, and (a) any information or testimony which he has given in connection with this case can be used in any prosecution against him, notwithstanding the provisions above, and (b) the government reserves the right to

2

**EXHIBIT B**

prosecute him for perjury or false statement, to withdraw its agreement in this case, and to bring any additional charges, including those that the government agreed to dismiss in connection with this plea agreement.   If the government alleges such conduct, it will have the burden of establishing the alleged conduct at a separate hearing by a preponderance of the evidence.

7.    Provided that the defendant cooperates fully and truthfully with the government as described above, as determined in the government's sole discretion, the government agrees that: (a) it will recommend a sentence within the guideline range of 10 to 16 months; and (b) it will not to bring any additional criminal charges against the defendant based on the conduct currently known to the government.   No other consideration will be given for the defendant's cooperation, and the government will **not** be filing a motion pursuant to Section 5K1.1 of the United States Sentencing Guidelines in order to seek a sentence below the guideline range of 10 to 16 months.

8.    The defendant agrees that this plea agreement shall toll the statute of limitations relating to any offense conduct currently known to the government and that he will not raise a defense based on the statute of limitations for any additional charges brought by the government against the defendant if the defendant fails to fully and truthfully cooperate with the government as described above.

9.    The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.   Understanding this, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria:   (1) the sentence imposed is above the maximum penalty provided in the statute of conviction,

**EXHIBIT B**

(2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly, or (3) the Court determines that the total offense level, after the 2-level reduction for acceptance of responsibility, is higher than 12 and imposes a sentence above the sentencing guideline range calculated for that total offense level.   Except as provided above, the defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742.   The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.   This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct.   Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

10.    This plea agreement is made pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

## II.  ELEMENTS OF THE OFFENSE

11.    The parties agree that the elements of the making a false statement offense charged in the Information to which this plea is being tendered are as follows:

A.    The defendant made a false, fictitious, or fraudulent statement or representation to the government as described in the Information;

B.    The defendant made the statement or representation knowing that

4

**EXHIBIT B**

it was false;

C.    The defendant made the statement or representation willfully, that is knowing that his conduct was unlawful;

D.    The statement or representation was made in a matter within the jurisdiction of the executive branch of the United States; and

E.    The statement or representation was material to the United States Securities and Exchange Commission.[1]

### III. STATUTORY PENALTIES

12.    The maximum statutory penalty for a violation of 18 U.S.C. § 1001 is: not more than 5 years of imprisonment, a fine of not more than the greater of $250,000, or both; not more than 3 years of supervised release; and a $100 special assessment fee.

13.    If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV.  COLLATERAL CONSEQUENCES

14.    The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V.  STIPULATION OF FACTS

15.    The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below.

---

[1] Tenth Circuit Pattern Jury Instructions (Criminal Cases), 2011, § 2.46.1 (updated 2018) (revised to reflect DOJ's interpretation of "willfully" as requiring knowledge that conduct was unlawful.).

**EXHIBIT B**

Because the Court must, as part of its sentencing methodology, compute the advisory

guideline range for the offense of conviction, consider relevant conduct, and consider

the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below

which are pertinent to those considerations and computations. To the extent the parties

disagree about the facts set forth below, the stipulation of facts identifies which facts are

known to be in dispute at the time of the execution of the plea agreement.

16.    This stipulation of facts does not preclude either party from hereafter

presenting the Court with additional facts which do not contradict facts to which the

parties have stipulated and which are relevant to the Court's guideline computations, to

other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

17.    The parties agree that the date on which relevant conduct began is in the

month of April 2019.

18.    The parties agree as follows:

From early 2015 through September 2019, defendant Young and his partner

M.S. owned and operated a company called Mediatrix Capital, Inc. ("Mediatrix Capital").

In 2016, an additional partner, B.S., joined Mediatrix Capital.   In documents provided to

potential investors in 2015, defendant Young and M.S. claimed that Mediatrix Capital

was "an industry leading independent Trading Advisor of Foreign Currency FX Spot and

OTC FX Options."   In these documents, defendant Young and M.S. further claimed that

Mediatrix Capital's "trading and management team is composed of some of the best,

most respected FX Spot and FX OTC Options strategists currently working in the

industry."   Defendant Young and M.S. further claimed that Mediatrix Capital's business

model made "superior consistent profits for its clients and allow[ed] dependable,

**EXHIBIT B**

monthly returns that most firms only hope for in any single year's time."

In 2015, defendant Young had primary responsibility at Mediatrix Capital for raising funds from investors, and M.S. had primary responsibility for trading investor funds in the Foreign Exchange Market.   In 2015, through Mediatrix Capital, defendant Young raised more than $500,000 in investor funds from at least seven investors for the purpose of trading that money in the Foreign Exchange Market.   Immediately, after placing these investor funds in trade in the Foreign Exchange Market, Mediatrix Capital began losing these investor funds in that market.   By the end of 2015, Mediatrix Capital had lost all or the vast majority of these investor funds due to poor trade results.

In March 2019, defendant Young was subpoenaed by the United States Securities and Exchange Commission ("SEC") to provide sworn testimony regarding the SEC's investigation of Mediatrx Capital.   Prior to his testimony, the SEC sent defendant Young an information sheet (SEC Form 1662) that contained the following admonishment at the top of the document:

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully –
> > (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> > (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> > (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

On April 10, 2019, in Denver, Colorado, defendant Young provided testimony

**EXHIBIT B**

under oath to representatives of the SEC.   At the beginning of his testimony, a representative from the SEC confirmed that defendant Young had received and reviewed SEC Form 1662.   During his testimony, defendant Young knowingly and intentionally made a false statement in response to a question posed by a representative of the SEC, specifically:

- SEC Question: "When was the first time that Mediatrix Capital in any format raised funds from an investor?"

- Defendant YOUNG's false answer: "Would have been first quarter of two thousand – well outside of Mr. S[.] and his – the marines that he – okay.   It would have been first quarter of 2016."

Defendant Young's answer was a false statement because, as defendant Young then and there knew, Mediatrix Capital raised more than $500,000 in funds from investors in 2015 and quickly lost all or the vast majority of those investor funds by unsuccessfully trading it in the Foreign Exchange Market.   At the time of his testimony, defendant Young knew that knowingly and intentionally making a false statement during his testimony to the SEC was unlawful because: (1) the notice that the SEC sent him that is set forth above advised him that it was unlawful; and (2) he was placed under oath at the beginning of his testimony and he knew that lying under oath was unlawful. Defendant Young's false statement was within the jurisdiction of the SEC because the SEC's mission is to protect investors from, among other things, fraudulent securities investment offerings.   Defendant Young's false statement was also material to the SEC because the SEC investigation included Mediatrix Capital's use of false statements to obtain investor funds for the purpose of trading those funds.   Two of the false

8

**EXHIBIT B**

statements that the SEC was investigating were Mediatrix Capital's claim that (1) it had a history of success and (2) from 2013 through at least late 2018, it had never had a losing month in the Foreign Exchange Market.   The fact that Mediatrix Capital had raised from investors, and lost, approximately $500,000 in 2015 was material to the SEC's investigation of those claims.   The SEC is an agency within the executive branch of the Government of the United States.

At the time of Mr. Young's April 10, 2019, testimony, a criminal investigation relating to Mediatrix Capital had not yet been initiated.

## VI.    ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

19.    The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission.   In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines.   To the extent that the parties disagree about the guideline computations, the recitation below identifies in bold the matters which are in dispute, if any.

A.    The base guideline is § 2J1.3,[2] with a base offense level of 14.

B.    The defendant should receive a 2-level downward adjustment for

---

[2] Section 2J1.3 is applied as a result of the Cross Reference provision under Section 2B1.1(c)(3).   The parties stipulate and agree that no further specific offense characteristics or cross references apply.

9

**EXHIBIT B**

timely acceptance of responsibility.   The resulting offense level would be 12.

C.    The parties understand that the defendant's criminal history computation is tentative.   The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be I.

D.    The career offender/criminal livelihood/armed career criminal adjustments would not apply.

E.    The advisory guideline range resulting from these calculations is 10-16 months.   However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 10 months (bottom of Category I) to 37 months (top of Category VI).   The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

I.    Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $5,500 to $55,000, plus applicable interest and penalties.

J.    Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 1 year, but not more than 3 years.

20.    The parties understand that although the Court will consider the parties'

**EXHIBIT B**

estimate, the Court must make its own determination of the guideline range.   In doing so, the Court is not bound by the position of any party.

21.    No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

22.    The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

**EXHIBIT B**

## VII.   ENTIRE AGREEMENT

22.    This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

| 1/5/21 | |
|---|---|
| Date | MICHAEL STEPHEN YOUNG<br>Defendant |
| 1/5/21 | *Brian Leedy* |
| Date | FREDRIC WINOCUR<br>BRIAN LEEDY<br>Attorney for Defendant YOUNG |
| 11/20/2020 | |
| Date | PEGEEN D. RHYNE<br>Assistant U.S. Attorney |

12

**EXHIBIT B**

AO 245B (CO Rev. 11/20)    Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

District of Colorado

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| **v.** | ) | |
| MICHAEL STEPHEN YOUNG | ) | Case Number:    1:20-cr-00349-RBJ-1 |
| | ) | USM Number:    15331-509 |
| | ) | Fredric Michael Winocur and  Brian Rowland Leedy |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s)    1 of the Information

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section** | **Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|---|
| 18 U.S.C. § 1001 | False Statements | 04/10/2019 | 1 |

    The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

June 11, 2024
Date of Imposition of Judgment

_Brooke Jackson_
Signature of Judge

R. Brooke Jackson, Senior United States District Judge
Name and Title of Judge

June 13, 2024
Date

**EXHIBIT C**

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

Judgment — Page __2__ of __8__

DEFENDANT:        MICHAEL STEPHEN YOUNG
CASE NUMBER:      1:20-cr-00349-RBJ-1

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: **twelve (12) months and one (1) day.**

☒ The court makes the following recommendations to the Bureau of Prisons: The Court recommends the defendant be designated to a facility in the State of Colorado.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

    ☐ as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☒ before 12 p.m.   __within 15 days of designation_____ .

    ☐ as notified by the United States Marshal.

    ☒ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**EXHIBIT C**

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

|  | Judgment — Page 3 of 8 |
|---|---|

DEFENDANT: MICHAEL STEPHEN YOUNG
CASE NUMBER: 1:20-cr-00349-RBJ-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: **one (1) year.**

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and a maximum of 20 tests per year of supervision thereafter.
    - ☒ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well with any other conditions on the attached page.

## EXHIBIT C

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

| | |
|---|---|
| | Judgment — Page __4__ of __8__ |

DEFENDANT:    MICHAEL STEPHEN YOUNG
CASE NUMBER:    1:20-cr-00349-RBJ-1

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining Court approval, notify the person about the risk or require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

**EXHIBIT C**

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

DEFENDANT: **MICHAEL STEPHEN YOUNG**
CASE NUMBER: 1:20-cr-00349-RBJ-1

## SPECIAL CONDITIONS OF SUPERVISION

1. Any business you operate during the term of supervision must be approved by the probation officer. You must operate under a formal, registered entity, and you must provide the probation officer with the name of the business entity and its registered agents. You must maintain business records and provide all business documentation and records as requested by the probation officer.

2. You must provide the probation officer access to any requested financial information and authorize the release of any financial information until all financial obligations imposed by the court are paid in full.

3. You must apply any monies received from income tax refunds, lottery winnings, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation in this case.

4. If the judgment imposes a financial penalty/restitution, you must pay the financial penalty/restitution in accordance with the Schedule of Payments sheet of this judgment. You must also notify the court of any changes in economic circumstances that might affect your ability to pay the financial penalty/restitution.

5. You must not incur new credit charges or open additional lines of credit without the approval of the probation officer, unless you are in compliance with the periodic payment obligations imposed pursuant to the Court's judgment and sentence.

6. If you have an outstanding financial obligation, the probation office may share any financial or employment documentation relevant to you with the Asset Recovery Division of the United States Attorney's Office to assist in the collection of the obligation.

7. You must complete 100 hours of community service. The probation officer will supervise your participation in the program by approving the program, and frequency of participation. You must provide written verification of completed hours to the probation officer.

**EXHIBIT C**

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

Judgment — Page __6__ of __8__

DEFENDANT:     MICHAEL STEPHEN YOUNG
CASE NUMBER:     1:20-cr-00349-RBJ-1

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on the following page.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 4,000.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| | | | | |
|---|---|---|---|---|
| **TOTALS** | $ _____ | $ _____ | | |

☐ Restitution amount ordered pursuant to plea agreement     $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the following page may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the     ☒ fine     ☐ restitution.

☐ the interest requirement for the     ☐ fine     ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Publ. L. No. 115-299.
\** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**EXHIBIT C**

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

| | Judgment — Page 7 of 8 |
|---|---|

DEFENDANT: MICHAEL STEPHEN YOUNG
CASE NUMBER: 1:20-cr-00349-RBJ-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of $ _____ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ Special instructions regarding the payment of criminal monetary penalties:

    The fine obligation is due immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number
Defendant and Co-Defendant Names
(including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| | | | |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**EXHIBIT C**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02594-RM-SKC

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

MEDIATRIX CAPITAL INC., et al.,

     Defendants,

and

MEDIATRIX CAPITAL FUND LTD., et al.,

     Relief Defendants.

---

**ORDER APPOINTING RECEIVER**

---

    **WHEREAS** this matter has come before this Court upon Plaintiff U.S. Securities and

Exchange Commission's ("Commission") motion to appoint a receiver in the above-captioned

action; and,

    **WHEREAS** the Court finds that, based on the record in these proceedings, the

appointment of a receiver in this action is necessary and appropriate for the purposes of

marshaling and preserving all assets of the Defendants ("Receivership Assets") and those assets

of the Relief Defendants that: (a) are attributable to funds derived from investors or clients of the

Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently

transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of

the Defendants (collectively, the "Recoverable Assets"); and,

1

**EXHIBIT D**

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Defendants and Relief Defendants, and venue properly lies in this district.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

This Court hereby takes exclusive jurisdiction over the assets, of whatever kind and wherever situated, of the following Defendants: Michael S. Young; Michael S. Stewart; Bryant E. Sewall (the "Individual Defendants"); and Mediatrix Capital Inc.; Blue Isle Markets Inc.; and Blue Isle Markets Ltd. (the "Entity Defendants" and together with the Individual Defendants, the "Receivership Defendants") and of the Recoverable Assets of the following Relief Defendants: Mediatrix Capital Fund Ltd.; Island Technologies LLC; West Beach LLC; Salve Regina Trust; TF Alliance, LLC; Casa Conejo LLC; Hase Haus, LLC; DCC Islands Foundation; Keystone Business Trust; Weinzel, LLC, The 1989 Foundation, Mediatrix Capital PR LLC,  Mediatrix Capital, LLC; Blue Isle Markets Inc. (Cayman Islands) (the "Entity Receivership Relief Defendants" or the "Entity Relief Defendants"); and Victoria M. Stewart; Maria C. Young; and Hanna Ohonkova Sewall (collectively with the Entity Relief Defendants, the "Receivership Relief Defendants"), not including those assets previously excluded from the asset freeze.  (*See* ECF Nos. 101, 103 ("permitting the individual defendants to open separate bank accounts that will remain unfrozen for current living expenses").)

Until further Order of this Court, Brick Kane of Robb Evans & Associates LLC is hereby appointed to serve without bond as receiver (the "Receiver") over the (1) Entity Defendants; (2) the Receivership Assets of the Individual Defendants; and (3) the Recoverable Assets of the Receivership Relief Defendants.

**EXHIBIT D**

## I. <u>General Powers and Duties of Receiver</u>

1.      The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Defendants and the Receivership Relief Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66.

2.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys and other agents of the Receivership Defendants and Receivership Relief Defendants are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the Receivership Defendants' or Receivership Relief Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver.  The Receiver shall assume and control the operation of the Entity Receivership Defendants and the Entity Relief Defendants and shall pursue and preserve all of their claims.

3.      No person holding or claiming any position of any sort with any of the Receivership Defendants or Receivership Relief Defendants shall possess any authority to act by or on behalf of any of the Receivership Defendants or and Receivership Relief Defendants.

4.      Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

**EXHIBIT D**

A.    To use reasonable efforts to determine the nature, location and value of all property interests of the Receivership Defendants and of the Receivership Relief Defendants Recoverable Assets, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Defendants and Receivership Relief Defendants own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estate");

B.    To take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Defendants and Receivership Relief Defendants; to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto;

C.    To manage, control, operate and maintain the Receivership Estate and hold in his possession, custody and control all Receivership Property, pending further Order of this Court;

D.    To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging its duties as Receiver;

E.    To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees and agents of the Receivership Defendants and Receivership Relief Defendants;

F.    To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers;

G.    To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation or concealment of Receivership Property;

H.    The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

4

**EXHIBIT D**

I.  To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.  To pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Property or the Receivership Estate; and,

K.  To take such other action as may be approved by this Court.

## II. Access to Information

5.  The Receivership Defendants and Receivership Relief Defendants and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the Entity Receivership Defendants and the Entity Receivership Relief Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants, Receivership Relief Defendants, and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

6.  Within ten (10) days of the entry of this Order, the Receivership Defendants and Receivership Relief Defendants shall file with the Court and serve upon the Receiver and the Commission a sworn statement, listing: (a) the identity, location and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants and any other agents or contractors of the Receivership Defendants and Receivership Relief Defendants; and, (c) the names, addresses and amounts of claims of all known creditors of the Receivership Defendants and Receivership Relief Defendants. These filings may supplement and need not duplicate the accountings provided by Receivership Defendants and the

**EXHIBIT D**

Receivership Relief Defendants in response to the September 13, 2019, Order Granting

Plaintiff's Motion for an Ex Parte Asset Freeze, Temporary Restraining Order, Order to Show

Cause, and other Emergency Relief (ECF No. 10).  (*See* ECF No. 28.)

      7.     Within thirty (30) days of the entry of this Order, the Receivership Defendants

and Receivership Relief Defendants shall file with the Court and serve upon the Receiver and the

Commission a sworn statement and accounting, with complete documentation, covering the

period from January 1, 2017 to the present:

      A.     Of all Receivership Property, wherever located, held by or in the name of the Receivership Defendants or Receivership Relief Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

      B.     Identifying every account at every bank, brokerage or other financial institution: (a) over which Receivership Defendants or Receivership Relief Defendants have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants or Receivership Relief Defendants;

      C.     Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by each Receivership Defendant and Receivership Relief Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

**EXHIBIT D**

D.   Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.   Of all funds received by the Receivership Defendants and Receivership Relief Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the Commission's Complaint. The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G.   Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.   Of all transfers of assets made by any of them.

8.   Within thirty (30) days of the entry of this Order, the Receivership Defendants and Receivership Relief Defendants shall provide to the Receiver and the Commission copies of the Receivership Defendants' and Receivership Relief Defendants' federal income tax returns for 2016-2019, with all relevant and necessary underlying documentation.

9.   The Individual Receivership Defendants and individual Receivership Relief Defendants, and the Entity Receivership Defendants' and Entity Receivership Relief Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants and Receivership Relief Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants and Receivership Relief Defendants. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

7

**EXHIBIT D**

10.     The Receiver has the authority to issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and applicable Local Rules, except for the provisions of Federal Rule of Civil Procedure 26(d)(1), concerning any subject matter within the powers and duties granted by this Order.

11.     The Receivership Defendants and Receivership Relief Defendants are required to assist the Receiver in fulfilling his duties and obligations.  As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

### III.  Access to Books, Records and Accounts

12.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Defendants and Receivership Relief Defendants not specifically excluded from this Order (*see* ECF Nos. 101, 103).  All persons and entities having control, custody or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

13.     The Receivership Defendants and Receivership Relief Defendants, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendants and Receivership Relief Defendants, and any persons receiving notice of this Order by personal service, facsimile transmission or otherwise, having possession of the property, business, books, records, accounts or assets of the Receivership Defendants and Receivership Relief Defendants are hereby directed to deliver the same to the Receiver, his agents and/or employees.

14.     All banks, brokerage firms, financial institutions, and other persons or entities

8

**EXHIBIT D**

which have possession, custody or control of any assets or funds held by, in the name of, or for

the benefit of, directly or indirectly, and of the Receivership Defendants or Receivership Relief

Defendants that receive actual notice of this Order by personal service, facsimile transmission or

otherwise shall:

    A.    Not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Defendants and Receivership Relief Defendants except upon instructions from the Receiver;

    B.    Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

    C.    Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

    D.    Cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## IV.  Access to Real and Personal Property

15.    The Receiver is authorized to take immediate possession of all personal property

of the Receivership Defendants and of the Relief Defendants, to the extent such personal

property is a Recoverable Asset, wherever located, including but not limited to electronically

stored information, computers, laptops, hard drives, external storage drives, and any other such

memory, media or electronic storage devices, books, papers, data processing records, evidence of

indebtedness, bank records and accounts, savings records and accounts, brokerage records and

accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments,

contracts, mortgages, furniture, office supplies and equipment.

**EXHIBIT D**

16.     The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants and of the Receivership Relief Defendants to the extent such real property is a Recoverable Asset, wherever located, including but not limited to all ownership and leasehold interests and fixtures.  Notwithstanding this authority, the Receiver shall not take any actions to dispossess Defendants of their primary residences (Michael Young: 5406 S. Cottonwood Ct., Greenwood Village, CO; Michael Stewart: 8082 E. Arroyo Hondo Rd., Scottsdale, AZ; Bryant Sewall: apartment in Ukraine) until at least ninety (90) days after entry of this order and after obtaining approval from the Court.  Upon receiving actual notice of this Order by personal service, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing or erasing anything on such premises.

17.     Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody and control of, or identify the location of, any assets, records or other materials consisting of Receivership Property and belonging to the Receivership Estate.

### V. <u>Notice to Third Parties</u>

18.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendants and Receivership Relief Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

10

**EXHIBIT D**

19.    All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant or Receivership Relief Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant or Receivership Relief Defendant had received such payment.

20.    In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates.   All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

## VI.  Injunction against Interference with Receiver

21.    The Receivership Defendants and Receivership Relief Defendants and all persons receiving notice of this Order by personal service, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B.    Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

11

**EXHIBIT D**

    C.     Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any Receivership Defendant or Receivership Relief Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or and Receivership Relief Defendant or which otherwise affects any Receivership Property; or,

    D.     Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Property or the Receivership Estate.

22.    The Receivership Defendants and Receivership Relief Defendants shall cooperate with and assist the Receiver in the performance of his duties.

23.    The Receiver shall promptly notify the Court and Commission counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## VII. Stay of Litigation

24.    As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Defendants and Receivership Relief Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' and Receivership Relief Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

12

**EXHIBIT D**

25.    The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

26.    All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.  Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants or Receivership Relief Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## VIII.  <u>Managing Assets</u>

27.    The Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

28.    The Receiver's deposit account shall include in its account name the words "Receiver's Account" together with the name of this litigation.

29.    The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the true and proper value of such Receivership Property.

30.    Subject to Paragraph 32, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most

**EXHIBIT D**

beneficial to the Receivership Estate, and with due regard to the true and proper value of such real property.

31.    Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.

32.    The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estate, including making legally required payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

33.    The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, when applicable.  The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund.  The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund."  The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2.

**EXHIBIT D**

## IX.  **Investigate and Prosecute Claims**

34.    Subject to the requirement, in Section VIII above, that leave of this Court is required to resume or commence certain litigation, the Receiver is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property.

35.    The receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## X.  **Liability of Receiver**

36.    Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

37.    The Receiver and his agents, acting within the scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

38.    This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

39.    In the event the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation

15

**EXHIBIT D**

shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XI. **Recommendations and Reports**

40.     Within thirty (30) days after the end of each calendar quarter, the Receiver shall file and serve a full report and accounting of the Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

41.     The Quarterly Status Report shall contain the following:

A.     A summary of the operations of the Receiver;

B.     The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C.     A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D.     A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E.     A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F.     A list of all known creditors with their addresses and the amounts of their claims; and,

16

**EXHIBIT D**

G.    The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

## XII.    Fees, Expenses, and Accountings

42.    Subject to Paragraphs 43-49 immediately below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

43.    Subject to Paragraph 44 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first advising the Commission, and will not engage any outside lawyers or law firms without first obtaining an Order of the Court authorizing such engagement.

44.    The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver. Such compensation shall require the prior approval of the Court.

45.    Within seventy-five (75) days after the end of each calendar quarter, the Receiver shall apply to the Court for compensation and expense reimbursement from the Receivership Funds (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the Commission a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

17

**EXHIBIT D**

46.    All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

47.    Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

48.    Each Quarterly Fee Application shall:

A.    Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

B.    Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

49.    At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED, this 11th day of September, 2020**

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

**EXHIBIT D**